# O. M. WOOD, Plff.,

## *v.*

# RAMÓN VALDÉS, Dft.

San Juan, Law, No. 530.

1. The court has jurisdiction of a case brought by an American citizen
   against a Spanish one, on the ground of diversity of citizenship.
2. In such a case defendant has not, under article 11 of the treaty of peace,
   a right to object to the jurisdiction of the court.

Opinion filed April 4, 1908.

*Messrs. Sweet, Rossy, & Campillo,* attorneys for plaintiff.

*Mr. Thomas D. Mott, Jr.,* attorney for defendant.

RODEY, Judge, delivered the following opinion:

This case is before us on the issue raised by the defendant's
plea to the jurisdiction. The complaint shows that the plaintiff
is a citizen of the United States and that the defendant is a

Note.—*Citizenship; jurisdiction.*—The authorities bearing upon the ques-
tion of diversity of citizenship as ground of jurisdiction are found in notes
to Emory v. Greenough, 1 L. ed. U. S. 640; Strawbridge v. Curtiss, 2 L. ed.
U. S. 435; M'Donald v. Smalley, 7 L. ed. U. S. 287; and Roberts v. Lewis,
36 L. ed. U. S. 579.

Wood v. Valdés.

subject of the King of Spain. The defendant in his plea sets up that he was a subject of the King of Spain and a resident of Porto Rico before and at the time of the ratification of the treaty of Paris between the government of Spain and the United States of America, and ever since has remained, and now is, such subject of the King of Spain and resident of Porto Rico. He therefore claims that, as the jurisdiction here is based entirely upon the diversity of citizenship of the parties, he is entitled to plead such citizenship and residence under art. 11 of the treaty [30 Stat. at L. 1760] as a reason why the suit should abate.

Art. 11 of the treaty of Paris reads as follows: "The Spaniards residing in the territories over which Spain by this treaty cedes or relinquishes her sovereignty shall be subject, in matters civil as well as criminal, to the jurisdiction of the courts of the country wherein they reside, pursuant to the ordinary laws governing the same; and they shall have the right to appear before such courts and to pursue the same course as citizens of the country to which the courts belong."

On the 25th day of January of the present year, in case No. 504 in this court, entitled Munich v. Valdés, we filed an opinion [ante, 251] holding against this same sort of a plea made in that case by this same defendant. It may be remarked, though, that there was this difference: In that case the plaintiff, Munich, was a Porto Rican, and the plea was not interposed until after verdict; but the substance of the contention is necessarily the same; that is, that defendant, Valdés, because he is a Spaniard and a resident of Porto Rico, under the above article of the treaty has an absolute right to refuse to be sued save in an insular court. In the case referred to, we stated that we were of opinion when the phrase, "to pursue the same course as citizens

of the country to which the courts belong" was used in that article of the treaty, at least as to Porto Rico, it referred to citizens of the United States; because it was not then known but what the people of Porto Rico would shortly thereafter be collectively made full-fledged citizens of our country. Counsel for defendant admits that the position he is thus contending for attaches to no other class of foreigners save Spaniards.

Sec. 34 of the Foraker act (31 Stat. at L. 77, chap. 191), which is the organic law of the island, gives this court the jurisdiction of a district and circuit court of the United States, and provides that it shall proceed therein in the same manner as a circuit court. This jurisdiction was increased by the act of Congress of March 2, 1901 (31 Stat. at L. 953, chap. 812), § 3, which provided that it shall also "extend to and embrace controversies where the parties, or either of them, are citizens of the United States, or citizens or subjects of a foreign state or states, wherein the matter in dispute exceeds, exclusive of interest or costs, the sum or value of one thousand dollars."

In July, 1906, we rendered an opinion in the case of Vallecillo y Mandry v. Bertran, 2 Porto Rico Fed. Rep. 46, which has become the leading case in this jurisdiction on the question of the jurisdiction of this court under said amendment to the organic act. On page 53 of the report it will be seen that we quoted from the report of the committee of the United States Senate, when the amendment in question was passed, as follows: "The purpose of this amendment is to enlarge the jurisdiction, as indicated, as to amount; and, also, so as to embrace controversies where both parties, or either of them, are citizens of the United States, although they may be citizens of the same state of the United States; and also to give the court jurisdic·

tion in controversies where the parties, or either of them, are citizens or subjects of a foreign state or states."

As early as March 20, 1903, in Compañia Anonyma de la Luz Electrica v. Ponce R. & Light Co. 1 Porto Rico Fed. Rep. 218, a previous incumbent of this bench, under the authority of, and because of, said amendment to the organic act, held that this court had jurisdiction in that case, even though the plaintiff was a Spanish corporation and the defendant an American corporation, the latter organized under the laws of the state of New Jersey.

A later incumbent of this bench, on February 7, 1905, in Martinez de Hernandez v. Bertran y Casañas, 2 Porto Rico Fed. Rep. 5, states that it has been "uniformly held in this court, in construing the amendment" referred to, "that where either party to a controversy is a citizen of any other state, jurisdiction follows."

The Supreme Court of the United States in Ortega v. Lara, 202 U. S. 344, 50 L. ed. 1057, 26 Sup. Ct. Rep. 707, the opinion being by the Chief Justice, held, in the closing words of that opinion, referring to this court, that "the jurisdiction of the district court, when the parties on both sides were the subjects of the King of Spain, has several times been sustained by this court, and we do not feel required in this case to make any other ruling."

We confess that we have been unable to find where the Supreme Court had previously so held, but that is the language of the court in that particular case, in which both parties were in fact Spaniards. But there can be no question, we think, about that being the opinion of the Supreme Court of the United States, because a little later, in Garrozi v. Dastas, 204 U. S. 73, 51 L. ed. 376, 27 Sup. Ct. Rep. 224, Mr. Justice White, when de-

Wood v. Valdés.

livering the opinion, and referring to the amendment in question, said: "In consequence of the enlarged character of the jurisdiction conferred by that act, and the obvious departure which it manifests from the principles controlling the jurisdiction of a United States court as contradistinguished from a state court, we do not think the rule which demarks the line between the courts of the United States and state courts within the removal act should be held applicable to Porto Rico to the extent which might have obtained had the act of 1901 not been enacted."

Even if it should be admitted that there is merit in the contention of the defendant here, under the article of the treaty in question, still, as we pointed out in the Munich Case, supra, it is our opinion that the treaty in that regard was superseded by the jurisdictional amendment of 1901, aforesaid; and whenever an act of Congress collides with the provisions of a treaty, the courts of the country follow the act of Congress if it is the later voice of the lawmaking power, because treaties and acts of Congress are of exactly equal dignity under the Constitution. Botiller v. Dominguez, 130 U. S. 247, 32 L. ed. 928, 9 Sup. Ct. Rep. 525.

We have several times, in our opinions, referred to the fact that, shortly after coming to the island, we learned that at, and for some time after, American occupation, local conditions, which happily have since entirely passed away, were said to have been such as to cause a clamor for the creation of such a court as this is, and, after its creation, for the amendment as to its jurisdiction, for the reason that foreigners generally, and particularly the Spaniards who retained their Spanish citizenship and remained on the island, were, as it was said, fearful of the resentment of the native Porto Ricans in retaliation for real

Wood v. Valdés.

or imaginary grievances coming down from Spanish times.
This clamor for the creation of this court is said to have been
joined in by many American citizens who came to the island
in those early days, and who, at that time, were said to be dis-
inclined to having their property rights passed upon by courts
perhaps not then conversant with American ideas, and con-
ducted in a foreign language. For this reason we think Con-
gress did intend by the amendment in question to give this court
jurisdiction, certainly in cases where an American citizen sues
a Spaniard, as in this case, even though the latter is a resident
of this island.

We might have disposed of this matter in a single sentence;
but, as counsel has filed this same sort of a plea in several cases,
we felt it to be our duty to set forth our views at length.

For the reasons herein stated, the plea to the jurisdiction will
be overruled, and it is so ordered. The defendant will be re-
quired to answer within ten days.